**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **JOSEPH BOND**, individually and on behalf of a class of all persons and entities similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**FOLSOM INSURANCE AGENCY LLC, CODY FOLSOM**,<br><br>*Defendants.* | Case No. 3:24-cv-02551-L-BN<br><br>Hon. **Sam A. Lindsay**, presiding<br>Hon. **David L. Horan**, referral |

**SUPPLEMENTAL DECLARATION OF EXPERT AARON WOOLFSON**

I, Aaron Woolfson, state and declare as follows:

1. I have been retained by Plaintiff's counsel to provide structure to, and analyze, the electronic Call Detail Records ("CDR" or "CDRs") provided in this lawsuit reflecting the calling done by Folsom Insurance Agency LLC and Cody Folsom ("Folsom Insurance" or "Folsom" or "Defendant") and to provide expert opinions on such data.

2. I previously submitted a declaration in this matter on May 16th, 2025 (Decl. Woolfson, 05/16/2025). In my May 16th declaration, I performed an analysis upon a set of call results that were contained within the Excel-formatted files that had been provided ("call files"). Those files were originally devoid of telephone numbers, and I was unable to complete the full analysis as intended. Rather, I outlined my proposed methodology and the steps that I would take had the telephone numbers been present in the data.

3. On approximately July 20, 2025 I was provided with a refreshed set of files that replaced the original "call files" file. The contents of the file were the same as the original file, except that the new file contained telephone number to which calls had been placed.

4. Using the refreshed files ("*new call files*"), I was able to identify those telephone calls resulting in pre-recorded message to numbers that were wireless when they were called, and

1

Declaration of Aaron Woolfson                    Case No. 3:24-cv-02551-L-BN

were not ported within fifteen days.  This supplemental declaration outlines the methodology that I had discussed within my May 16, 2025 declaration to which I had applied to the refreshed file, and the conclusions that I have reached based upon the filters that I applied to the data.

5.    As described in this declaration, it is my conclusion that, using the CDR records, there is a reliable method to identify instances where the number to which a call was placed had been designed as a wireless telephone service on the date when called, resulted in a conveyance of a pre-recorded message, and the number had not been ported within fifteen (15) days of the call.

6.    I was not retained in this matter to determine the legal standards of any court decisions or their applicability to this case, and I was not involved in the sampling or selection of data provided by the Defendants. This report reflects the results of my study of the underlying facts and independent analysis of the data and documents provided by the Defendant and third parties. My rate is $440.00 per hour for expert engagements, and $675.00 per hour for depositions, trial, and arbitration appearances. I am personally familiar with the matters that are contained within this Declaration, and if called to testify, I can accurately and competently testify as to them.

**Qualifications and Expert Engagements.**

7.    I have over 25 years of experience in developing and analyzing databases and telephone systems and establishing the interfaces between telephone systems and the networks that convey calls.  I have implemented call recording and call data collection and retention systems for commercial, government, aerospace, telecommunications, and payroll industries.   My professional experience includes serving as an expert witness in cases where I evaluated the technical aspects of telephone systems, including whether they had a random or sequential number generator.

8.    My qualifications and curriculum vitae are attached to this expert report as Exhibit 1.  A list of the other cases in which I have testified as an expert at trial or by deposition during the previous four years is attached as Exhibit 2.  I have been qualified as an expert in both Federal and State courts.[1]  My testimony has been relied upon by courts in both individual and

---

[1]  *See ABM Industries Overtime Cases* (Case No JCCP 4502, San Francisco Superior Court) (2017) 19 Cal. App. 5th 277, footnote 5, at page 8, ("[T]here was evidence in the record that Woolfson (footnote continued)

Declaration of Aaron Woolfson                                    Case No. 3:24-cv-02551-L-BN

class actions,[2] by both plaintiffs and defendants. My opinions have also been relied upon in arbitrations, including in cases involving Telephone Consumer Protection Act ("TCPA") claims.

9.    I was the developer of the automated Verification of Deposit ("VOD") and Verification of Mortgage ("VOM") system that was used by Chase, Wells Fargo, Bank of America, as well as some regional banks and mortgage lenders, to facilitate the review of mortgage applications by call center staff.  These systems required a great deal of integration between the telephone systems and the financial institution's computer systems, and relied heavily on my deep understanding of database and time keeping integration technologies.  It also required me to build interfaces to the ACH[3] exchanges, and with Global Payments and other large automated electronic inter-exchanges of financial information.  Other processes necessitated integrating fax and OCR[4] capabilities as well as enhanced call routing – inbound and outbound – including predictive elements of enhanced call processing, and the precise timings of these events.

10.    I am the inventor of "Canvas", a programming language that I developed for interfacing between telephone systems and telephone networks, capable of processing hundreds of thousands of calls a day.  To date, hundreds of millions of calls have been handled by Canvas on behalf of call centers, financial institutions, conference calling companies, and organizations offering Interactive Voice Response ("IVR") services.[5]

---

had previously qualified as an expert in both state and federal court ...") *(ABM Industries Overtime Cases,* A132387, A133077, A133695, 19 Cal. App. 5th 277 (Dec. 11, 2017; pub. ord. Jan. 10, 2018)). (Exhibit 3).

[2] "The Court notes that Mr. Woolfson's expert report appears to include information related to the merits of the case in addition to class certification issues." *Gaines v. Law Office of Patenaude & Felix, A.P.C.*, Case No 3:13-cv-01556-JLS-DHB (S.D. Cal.), Sep. 21, 2015 ECF 132 at page 3.

[3] Automated Clearing House ("ACH").

[4] The OCR ("Optical Character Recognition") process as integrated into the automatic monitoring of telephone calls in real time to determine whether the call was a voice or fax call, and if a fax call, decoding the contents of each fax-page into machine readable text *while* a fax was being transmitted to the bank's computers for integration with a database.

[5] IVR is a technology that allows a computer to interact with humans through the use of voice and/or DTMF tones input via a telephone keypad. DTMF ("Dual Tone Multi Frequency") is the signal you generate when you press a telephone's touch keys.

3

Declaration of Aaron Woolfson                                    Case No. 3:24-cv-02551-L-BN

11.     I have developed highly available, upwardly scalable databases for use in the telecommunications industry.  The databases and telephone systems that I have personally developed and/or coded are used by telephone companies and call centers throughout the United States and Canada to catalogue and index various customer-calling activities.  Some of the companies that have used my databases and/or telephone equipment (which I personally created and manufactured) have included Japan Telecom, Experian, Bank of America, Wells Fargo Bank, JP Morgan, Bank of the West, Cogent Communications, Zone Telecom (ANPI), Aion Networks, Smartcall Conferencing, and First National Collection Bureau, Inc., and the United States government, including the Department of Justice.

12.     Through my hands-on work experience in developing databases and telephone systems, I have become very familiar with the technology related to telephone systems and their interfaces with the networks through which calls are processed, received, and transmitted.  I am also familiar with how dialing systems work, and how telephone systems handle inbound and outbound calls.

13.     I have been responsible for the design and development of specialized hardware and software systems that are highly dependent upon the capabilities of the computers upon which they run, and are in use in mission-critical applications, including Patriot Missile (SAIC, Patriot RTOS), Air Traffic Control Systems (Kongsberg Geospatial Corporation), and Point Lepreau Nuclear Generating Station, New Brunswick, Canada (Energié NB).

14.     I held a Certificate of Public Convenience and Necessity[6] ("CPCN") – a special license and compliance certification granted to companies that provide essential public services, such as telephone corporations.  The California Public Utilities Commission granted my most recent CPCN on July 18, 2017. This was a re-issue of my initial CPCN granted to TelSwitch, Inc. on June 10, 1994, which I held for approximately eighteen (18) years before taking a hiatus from providing public telephone services.  The license originally granted to me in 1994 allowed me to

---

[6]  Certificate of Convenience and Necessity U-5410-C granted to TelSwitch, Inc. on 06-10-1994 (Decision 94-06-022).  Reissued as U-7327-C on 07-18-2017 (Decision 17-07-009).

4

Declaration of Aaron Woolfson                                    Case No. 3:24-cv-02551-L-BN

interconnect the equipment that I designed, built and programmed, with the phone network for the purpose of providing wholesale and retail telecommunications services.

15.    I have also been qualified as an expert in matters involving the TCPA and have previously been engaged on behalf of defendants and plaintiffs to analyze records of calls and, among other things, compare them against records of leads.

16.    For example, in *Wright v. eXp Realty, LLC*, No. 6:18-cv-01851-PGB-EJK (M.D. Fla.), I was engaged on behalf of defendant *eXp* to analyze call records and, among other things, compare them against records of leads from various sources.

**Expertise Specifically Related to Database Work.**

17.    I was relied upon as an expert witness in the case of *Hines v. KFC*, filed in the United States District Court, Southern District of California (Case No. 09cv2422 JM (POR). In *Hines*, the court granted plaintiff's motion for class certification and certified plaintiff's meal period and rest break claims based on my analysis after finding that I am an "expert in the compilation and analysis of databases …."

18.    I was expert for the plaintiffs in *Albert H. Cicairos, Frank A. Daniel, Richard Wheeler and George Thompson v Summit Logistics, Inc.* and *Kenneth Bluford v Safeway Stores, Inc.* (Case No. CV014837 [Consolidated with Case No. CV028541] Superior Court of California, County of San Joaquin).  I have been told that, among other cases, *Bluford v Safeway, Inc.* established the framework for what eventually became known as AB1513 and Labor Code section 226.2, which governs compensation in the piece rate context.

19.    In addition, I served as an expert in the *ABM Industries Overtime Cases* (Case No JCCP 4502, San Francisco Superior Court).  Relying heavily upon my expert finding, the Appellate Court reversed the trial court's ruling and certified the plaintiffs' proposed wage and hour classes. The court noted that there was sufficient evidence contained within my expert report to support certification of the classes and subclasses, and that my experience was sufficient to allow my expert report to be admitted as evidence for that purpose. (Exhibit 3).

20.    I was also an expert in *Beatriz Aldapa And Elmer Avalos v. Fowler Packing Company, Inc., Ag Force, LLC, Fowler Marketing International LLC*, (Case No. 1:15-CV-00420-

Declaration of Aaron Woolfson                                    Case No. 3:24-cv-02551-L-BN

DAD-SAB ED, Ca.), where the employer used Datatech to maintain an accounting of piece-work and non-piece-work hours worked by agricultural workers. The court order in *Fowler Packing* is attached as Exhibit 4.

21.    I have applied similar methods to structure large amounts of unstructured data on behalf of defendant *Verizon Wireless* and *Collecto* in *Lofton v. Verizon* (Case No. 3:13-cv-05665) and *Lofton v. Collecto* (Case No. 4:13-cv-03293-YGR). In *Lofton v. Collecto*, I was ordered by the District Court of the Northern District of California to reconstruct a database from information that was in defendant Verizon's possession that Plaintiff stated was "un-structurable" and useless for purposes of analysis and determination of the results of calls that took place.  I was able to complete the re-structuring of Verizon's data so that the parties could reach a successful settlement.  The portion of the Court's Order from *Lofton v. Verizon* instructing me to create a database from Verizon's unstructured data is attached as Exhibit 5.

**Expertise Specifically Related to Outbound Dialing Systems in Call Centers.**

22.    I have over twenty-five years of hands-on experience in telecommunications, in the design and programming of the equipment that handles calls.  In specific, I was responsible for the development of specialized hardware and software systems, called Rapid Announce and Rapid Record that have been used in both telephone company central office and in call centers, for the pacing, dialing, and measurement of phone calls, and has cumulatively handled hundreds of millions of calls.  At its peak use, Rapid Announce processed 240,000 inbound and 280,000 outbound calls per day for companies such as First National Collection Bureau.

23.    Rapid Announce was primarily used to match the pacing of outbound calls with the availability of agents to accept the calls once they were answered.  Rapid Announce also evaluated the connected calls to determine whether the phone was answered by an answering machine or a live person.  Based upon the availability of the agents and the type of call that was being placed, the system would then transfer the call to the correct type of agent, or skill-set group, to handle the particular circumstances for which the call was received, or dialed.

24.    Rapid Record was responsible for handling the recording and media storage of inbound calls, as well as the implementation of a technology that I developed called

6

Declaration of Aaron Woolfson                                      Case No. 3:24-cv-02551-L-BN

AggravationSense.  AggravationSense was designed to measure the cadence and speed at which an individual spoke.  By measuring the cadence and speed of the speech against a baseline of background noise, AggravationSense would proactively patch in a customer service supervisor in advance of any party asking to speak with one, thus eliminating the stress associated with a particular call.

**Materials and Documents Reviewed and Relied Upon.**

25.    In conducting my analysis and forming my conclusions and opinions, I relied upon the following materials and information:

    **I.**    **Materials that I relied upon that originated in this matter:**

    (a)    The Complaint, ECF No. 1; and,

    (b)    Call records (*non-redacted*):
"BROADCAST DEC 20 2023 1.xlsx", "BROADCAST DEC 20 2023 2.xlsx", "BROADCAST DEC 20 2023 3.xlsx", "BROADCAST DEC 21 2023 1.xlsx", "BROADCAST DEC 21 2023 2.xlsx", "BROADCAST DEC 21 2023 3.xlsx", "BROADCAST DEC 21 2023 4.xlsx", "BROADCAST DEC 21 2023 5.xlsx", "BROADCAST DEC 21 2023 6.xlsx", "BROADCAST DEC 26 2023 1.xlsx", "BROADCAST DEC 26 2023 2.xlsx", "BROADCAST DEC 26 2023 3.xlsx", "BROADCAST DEC 26 2023 4.xlsx", "BROADCAST DEC 26 2023 5.xlsx", "BROADCAST DEC 26 2023 6.xlsx", "BROADCAST DEC 26 2023 7.xlsx", "BROADCAST DEC 26 2023 8.xlsx", "BROADCAST DEC 27 2023 1.xlsx", "BROADCAST DEC 27 2023 2.xlsx", "BROADCAST DEC 27 2023 3.xlsx", "BROADCAST DEC 27 2023 4.xlsx", "BROADCAST DEC 27 2023 5.xlsx", "BROADCAST DEC 28 2023 1.xlsx", "BROADCAST DEC 28 2023 2.xlsx", "BROADCAST DEC 28 2023 3.xlsx", "BROADCAST DEC 28 2023 4.xlsx", "BROADCAST DEC 28 2023 5.xlsx", "BROADCAST NOV 10 2023 1.xlsx", "BROADCAST NOV 10 2023 10.xlsx", "BROADCAST NOV 10 2023 11.xlsx", "BROADCAST NOV 10 2023 12.xlsx", "BROADCAST NOV 10 2023 2.xlsx", "BROADCAST NOV 10 2023 3.xlsx", "BROADCAST NOV 10 2023 4.xlsx", "BROADCAST NOV 10 2023 5.xlsx", "BROADCAST NOV 10 2023 6.xlsx", "BROADCAST NOV 10 2023 7.xlsx", "BROADCAST NOV 10 2023 8.xlsx", "BROADCAST NOV 10 2023 9.xlsx", "BROADCAST NOV 11 2023 1.xlsx", "BROADCAST NOV 11 2023 2.xlsx", "BROADCAST NOV 11 2023 3.xlsx", "BROADCAST NOV 11 2023 4.xlsx", "BROADCAST NOV 11 2023 5.xlsx", "BROADCAST NOV 11 2023 6.xlsx", "BROADCAST NOV 13 2023 1.xlsx", "BROADCAST NOV 14 2023 1.xlsx", "BROADCAST NOV 14 2023 2.xlsx", "BROADCAST NOV 14 2023 3.xlsx", "BROADCAST NOV 14 2023 4.xlsx", "BROADCAST NOV 14 2023 5.xlsx", "BROADCAST NOV 15 2023 1.xlsx", "BROADCAST NOV 15 2023 2.xlsx", "BROADCAST NOV 15 2023 3.xlsx", "BROADCAST NOV 15 2023 4.xlsx", "BROADCAST NOV 15 2023 5.xlsx", "BROADCAST NOV 15 2023 6.xlsx", "BROADCAST NOV 16 2023 1.xlsx", "BROADCAST NOV 16 2023 2.xlsx", "BROADCAST NOV 16 2023 3.xlsx", "BROADCAST NOV 16 2023 4.xlsx", "BROADCAST NOV 16 2023 5.xlsx", "BROADCAST NOV 16 2023 6.xlsx", "BROADCAST NOV 16 2023 7.xlsx", "BROADCAST NOV 16 2023 8.xlsx", "BROADCAST NOV 16 2023 9.xlsx",

7

Declaration of Aaron Woolfson            Case No. 3:24-cv-02551-L-BN

"BROADCAST NOV 20 2023 1.xlsx", "BROADCAST NOV 20 2023 2.xlsx", "BROADCAST NOV 20 2023 3.xlsx", "BROADCAST NOV 20 2023 4.xlsx", "BROADCAST NOV 20 2023 5.xlsx", "BROADCAST NOV 20 2023 6.xlsx", "BROADCAST NOV 21 2023 1.xlsx", "BROADCAST NOV 21 2023 2.xlsx", "BROADCAST NOV 21 2023 3.xlsx", "BROADCAST NOV 21 2023 4.xlsx", "BROADCAST NOV 21 2023 5.xlsx", "BROADCAST NOV 22 2023 1.xlsx", "BROADCAST NOV 22 2023 2.xlsx", "BROADCAST NOV 22 2023 3.xlsx", "BROADCAST NOV 22 2023 4.xlsx", "BROADCAST NOV 22 2023 5.xlsx", "BROADCAST NOV 27 2023 1.xlsx", "BROADCAST NOV 27 2023 2.xlsx", "BROADCAST NOV 27 2023 3.xlsx", "BROADCAST NOV 27 2023 4.xlsx", "BROADCAST NOV 27 2023 5.xlsx", "BROADCAST NOV 28 2023 1.xlsx", "BROADCAST NOV 28 2023 2.xlsx", "BROADCAST NOV 28 2023 3.xlsx", "BROADCAST NOV 28 2023 4.xlsx", "BROADCAST NOV 28 2023 5.xlsx", "BROADCAST NOV 29 2023 1.xlsx", "BROADCAST NOV 29 2023 2.xlsx", "BROADCAST NOV 29 2023 3.xlsx", "BROADCAST NOV 29 2023 4.xlsx", "BROADCAST NOV 29 2023 5.xlsx", "BROADCAST NOV 30 2023 1.xlsx", "BROADCAST NOV 30 2023 2.xlsx", "BROADCAST NOV 30 2023 3.xlsx", "BROADCAST NOV 30 2023 4.xlsx", "BROADCAST NOV 9 2023 1.xlsx", "BROADCAST NOV 9 2023 2.xlsx", "BROADCAST NOV 9 2023 3.xlsx"

"Broadcast Jan 1, 2024 1.xlsx", "Broadcast Jan 1, 2024 2.xlsx", "Broadcast Jan 1, 2024 3.xlsx", "Broadcast Jan 1, 2024 4.xlsx", "Broadcast Jan 1, 2024 5.xlsx", "Broadcast Jan 10, 2024 1.xlsx", "Broadcast Jan 10, 2024 2.xlsx", "Broadcast Jan 10, 2024 3.xlsx", "Broadcast Jan 10, 2024 4.xlsx", "Broadcast Jan 10, 2024 5.xlsx", "Broadcast Jan 11, 2024 1.xlsx", "Broadcast Jan 11, 2024 2.xlsx", "Broadcast Jan 11, 2024 3.xlsx", "Broadcast Jan 11, 2024 4.xlsx", "Broadcast Jan 11, 2024 5.xlsx", "Broadcast Jan 11, 2024 6.xlsx", "Broadcast Jan 12, 2024 1.xlsx", "Broadcast Jan 12, 2024 2.xlsx", "Broadcast Jan 12, 2024 3.xlsx", "Broadcast Jan 12, 2024 4.xlsx", "Broadcast Jan 12, 2024 5.xlsx", "Broadcast Jan 12, 2024 6.xlsx", "Broadcast Jan 14, 2024 1.xlsx", "Broadcast Jan 14, 2024, 2.xlsx", "Broadcast Jan 14, 2024, 3.xlsx", "Broadcast Jan 14, 2024, 4.xlsx", "Broadcast Jan 14, 2024, 5.xlsx", "Broadcast Jan 21, 2024.xlsx", "Broadcast Jan 3, 2024 1.xlsx", "Broadcast Jan 3, 2024 2.xlsx", "Broadcast Jan 3, 2024 3.xlsx", "Broadcast Jan 3, 2024 4.xlsx", "Broadcast Jan 3, 2024 5.xlsx", "Broadcast Jan 3, 2024 6.xlsx", "Broadcast Jan 3, 2024 7.xlsx", "Broadcast Jan 3, 2024 8.xlsx", "Broadcast Jan 4, 2024 1.xlsx", "Broadcast Jan 4, 2024 2.xlsx", "Broadcast Jan 4, 2024 3.xlsx", "Broadcast Jan 4, 2024 4.xlsx", "Broadcast Jan 4, 2024 5.xlsx", "Broadcast Jan 4, 2024 6.xlsx", "Broadcast Jan 5, 2024 1.xlsx", "Broadcast Jan 5, 2024 2.xlsx", "Broadcast Jan 5, 2024 3.xlsx", "Broadcast Jan 5, 2024 4.xlsx", "Broadcast Jan 5, 2024 5.xlsx", "Broadcast Jan 8, 2024 1.xlsx", "Broadcast Jan 8, 2024 2.xlsx", "Broadcast Jan 8, 2024 3.xlsx", "Broadcast Jan 8, 2024 4.xlsx", "Broadcast Jan 8, 2024 5.xlsx", "Broadcast Jan 8, 2024 6.xlsx", "Broadcast Jan 9, 2024 1.xlsx", "Broadcast Jan 9, 2024 2.xlsx", "Broadcast Jan 9, 2024 3.xlsx", "Broadcast Jan 9, 2024 4.xlsx", "Broadcast Jan 9, 2024 5.xlsx", "Broadcast Jan 9, 2024 6.xlsx",

**II.    Electronic database resources that are available to me:**

(a)    The National Exchange Carrier Association ("NECA") North American Numbering Plan 1000-block assignments database.

(b)    External, publicly available databases, including iConectiv's

8

Declaration of Aaron Woolfson                                    Case No. 3:24-cv-02551-L-BN

WDNC[7,8] for use in identifying the type of line (and the carrier) and the Federal TCPA-eligible area code list (Exhibit 6) and the daily DNC lists published by the FTC[9].

**Methods and Tools Used to analyze Records.**

26.    I create and analyze databases using Structured Query Language (SQL).  A database is a computerized compilation of data organized into tables, each table having columns (attributes), with column headings, and rows of information.  Tables that share at least one attribute in common are "related."  Tables without a common attribute may still be related via other tables with which they do share a common attribute.  The pathways relating those separate tables are called "joins."  Once tables have been related by a join, a user may view the combined information in the joined tables to derive new and/or useful information.  To access such information, a user sends queries to the database, which executes the queries and retrieves the requested information from the tables in the database. A database, however, only recognizes queries written in complex "query languages."  The most common query language is SQL.  A proper query in this language consists of one or more "clauses."  Common types of clauses are SELECT, WHERE, FROM, HAVING, ORDER BY, and GROUP BY clauses.  Thus, to compose a proper inquiry, a user must understand the structure and content of the relational database as

[7] FCC order FCC-15-35A1 (03/27/2015) explicitly mandated *continued* availability of iConectiv's data for purposes of compliance with the TCPA. (¶.142).  The historical information *does not* contain subscriber information, only carrier of record and line type.  Before number portability, this would have been a simple task of looking at the Local Exchange Routing Guide ("LERG"), or absent access to the LERG, finding the area codes and prefixes from an online collection of national phone books.  TelSwitch, Inc. is a reseller and authorized user of iConectiv data.

[8] In *Perrong v Call Identified as Connor* (Case No. 1:22-cv-04479-CPO-EAP, DC, New Jersey, Camden Vicinage), "plaintiff has queried the database of iConectiv, the company charged by the Federal Communications Commission to administer the Number Portability Administration Center, which is the master database which lists which telephone provider services a particular number, among other information required to route telephone calls to the proper provider" (ECF 3)

[9] TelSwitch, Inc's FTC Organization ID is 10159990-70991, Subscription Account Number (SAN) 10376173-476173-21.

Declaration of Aaron Woolfson                                    Case No. 3:24-cv-02551-L-BN

well as the complex syntax of the specific query language.

27.    By using a set of standardized SQL queries, I am able to tag each call record according to (a) the date of a message call; and (b) the disposition (e.g. delivery status) of the message, if one is present; (c) the telephone number to which the call was placed, (d) the duration of the calls, and € any other data field contained in the call records.

28.    Using SQL, I am able to also associate other information that is extrinsic to the worksheets provided that may provide additional guidance to the trier of fact, such as the name of the telephone company to which the number was serviced by on the date that the number was called.

**Steps I take when Organizing and Analyzing Call Detail ("Text") Records.**

29.    I start by opening each of the files that contain call records data (collectively referred to as "Call Detail Records" or "CDRs").  I do this to (a) determine the format that the call records were stored in, and then (b) to determine what pre-processing that I would need to conduct in order to achieve an import of call records.[10]

30.    I then import the CDRs file into SQL database tables using Microsoft SQL™ Service Management Studio to apply a set of filters to include only calls to valid telephone numbers that were meeting the following criteria:

    a.   Were made to a number that contained precisely ten digits;

    b.   Were made to a number that started with a 2 through 9;

    c.   Were contained within structurable data[11];

    d.   Had an associated date;

    e.   Were placed to Area Codes that were subject to the TCPA, according to

---

[10] I typically do not need to apply any pre-process to the CDRs, as most CDRs originate from electronic call data capture systems that are already Electronic Data Interface ("EDI") capable.

[11] All calls were structurable and conformed to a normalized database layout specification in which data is aligned to the designated columns.  There were no records that were excluded because they did not conform to the Defendant's specified layout.

Declaration of Aaron Woolfson                                    Case No. 3:24-cv-02551-L-BN

the FTC;

f. Whether the telephone number that was called was *wireless* on the date when it was called;

g. Whether the telephone number that was called had not been *ported* within fifteen (15) days of the call;

Whether the telephone call bears a disposition consistent with the conveyance of a pre-recorded message (e.g. "Delivered" with a type of "ringless")

31. Using these filters and criteria that I apply as part of my standard set of analysis methodology, I am able to accurately and reliably identify the calls that were sent, and the telephone numbers to which those call records had indicated the conveyance of a pre-recorded message that met the definition of the proposed class.

**Identification of Line-Classification by Telephone Number.**

32. As described previously, I utilize a database provided by iConectiv, called the WDNC database, to attribute the line classification type to telephone numbers, along with other pieces of information.

33. The line classification type processing engine allows a file containing phone calls (or calls) to be tagged with labels indicating whether the number called, or texted, was wireless (colloquially known as "isWireless") and the host Operating Company Number ("OCN") on the date indicated in the call record. It also indicates the date that a number was ported, and from whom.

34. Using the information from the Defendant's own files, I am able to apply the return-results from the national telephone number assignment database, which is required to be made available to entities for all purposes related to the TCPA, which is comprised of *isWireless, isPorted, isPortedDate, and Operating Company Number.*[12]

---

[12] The carrier-of-record and operating company number, in combination with the Telephone Number, colloquially called "MDN" or "ANI", provide the necessary fields for the creation of export files that are used by the various telephone companies in the Common-Language presentation-format expected by the Local Exchange Carriers or Wireless Exchange Carriers that (footnote continued)

11

Declaration of Aaron Woolfson                                    Case No. 3:24-cv-02551-L-BN

35.     By using the information provided, I was am able to determine the Carrier (Company) of Record and Operating Company Number of each of the telephone calls (or calls) that were validly formatted and contained and were part of the FTC's DNC-eligible area codes. I am also able to determine which calls (or calls) are to numbers that were assigned to a phone carrier on the date that the number was called or texted, and whether the numbers were part of the United States portion of the North American Numbering Plan ("NANP") or the expanded area[13] on the date when contacted.

36.     By using the *Carrier Of Record* and *Operating Company Number* from the data, I am able to build an Electronic Data Interchange ("EDI") record exchange database from the CDR records and organize it by carrier for the purpose of structuring the data into the correct EDI format that is in the expected layout that they are familiar with. The csv. Files, organized by carrier, can, if necessary, be utilized in subpoenas to telephone carriers to determine contact information, and/or any other information desired from the carrier, by structuring the data into a format that the carriers already use for exchanging data between and amongst themselves will facilitate as much of a response as is possible.

**Analysis of the Defendants' Records**

37.     I focused my analysis primarily upon the records of phone calls that were contained within the files identified in paragraph 25(I)(b).

38.     I started by building all data that was contained within Defendant's file database called "*calls_original*".   I created a master index to compare the linkages, or joins, between the calls within the previous call detail files, and the calls within the refreshed file.   Through this process, I was able to determine that the only item that had changed was that the telephone number that had been previously redacted was present in the new file

39.     I started with 232,941 calls that were contained within the files listed on 25(I)(b)

---

host the telephone numbers, to provide subscriber information for each number.

[13] Canada and some Caribbean islands that use the North American Numbering Plan but are not part of the United States Dialing Area.

12

Declaration of Aaron Woolfson                                    Case No. 3:24-cv-02551-L-BN

that were made between 11/09/2023 and 01/22/2024. From the 232,941 records, I removed 2,640 calls that were not an area code that was contained on the FTC's list of TCPA-eligible area codes. I then removed 106,170 records that did not bear "*delivered*" and "*ringless*". This left 124,131 remaining calls.

40.    From the remaining 124,131 remaining calls, I removed 1,694 calls that appeared to be duplicative of other calls in the data[14]. I then removed 10,760 calls that were placed to numbers that were not indicated as having been to wireless numbers *as of the date* of the call. Finally, I removed 342 calls that were to numbers that had been wireless, but had been ported within fifteen (15) days of the call to that number. This left 111,335 remaining calls.

41.    The steps that I conducted to complete the waterfall analysis are as follows:

| All items within "Defendant Call Records" files [callLogs] : | |
|---|---|
| Removal of any calls to any number that was not part of the FTC's list of valid TCPA-eligible north american numbering plan destination area codes, or records indicating a telephone number that was not ten digits. | (2,640) |
| Removal of any call records that did not contain the following: "delivered" with type "ringless" | (106,170) |
| Removal of any duplicate call records (e.g. Removal of any records from the remaining call detail records ("CDR") where the call was recorded | (1,694) |
| Removal of any calls that were to numbers that were not wireless as of the date when called. | (10,760) |
| Removal of any calls that weer to numbers that were wireless as of the date when called, but they had been ported within fifteen (15) days of the call. | (342) |
| Quantity of unique numbers to which the **111,335** calls were placed, where the # was wireless, and not ported, or if was ported, it was ported more than fifteen (15) days before the call, where the disposition indicates that a pre-recorded message had been conveyed. | 41,719 |

42.    In sum, out of the 232,941 calls that were contained within the Defendants' call detail files, I was able to deduce from the data provided that there were 111,335 unique calls that

---

[14] Duplicates usually occur as a result of production sets that have an occasional overlapping range within the production data outputs.

13

Declaration of Aaron Woolfson                                Case No. 3:24-cv-02551-L-BN

were placed to 41,719 unique telephone numbers that resulted in the conveyance of a pre-recorded message to a telephone number that had been wireless as of the date called, had not been ported within fifteen (15) days of the call.  That includes five (5) calls to the Named Plaintiff's number ending in -1282:

| | filename | broadcast_name | phoneNumber | status | result | type |
|---|---|---|---|---|---|---|
| 1 | Broadcast Jan 8, 2024 2 | Broadcast at Jan 8, 2024 11:56 AM | 1282 | Success | Delivered | Ringless |
| 2 | Broadcast Jan 14, 2024 | Broadcast at Jan 14, 2024 5:54 PM | 1282 | Success | Delivered | Ringless |
| 3 | Broadcast Jan 3, 2024 4 | Broadcast at Jan 3, 2024 1:36 PM | 1282 | Success | Delivered | Ringless |
| 4 | Broadcast Jan 5, 2024 3 | Broadcast at Jan 5, 2024 9:24 AM | 1282 | Success | Delivered | Ringless |
| 5 | Broadcast Jan 9, 2024 4 | Broadcast at Jan 9, 2024 10:47 AM | 1282 | Success | Delivered | Ringless |

43.    Attached as Exhibit 7 is the precise SQL that I used to construct the database containing the Defendant's data and to conduct the analysis.  The SQL queries that I used can accurately and reliably identify the telephone numbers, and the quantity of calls to those telephone numbers.  The results are attached as Exhibit 8.

**SUMMARY OF CONCLUSIONS:**

44.    From the data provided, I was able to deduce that there were 111,335 unique calls that were placed to 41,719 unique telephone numbers that resulted in the conveyance of a pre-recorded message to a telephone number that had been wireless as of the date called, had not been ported within fifteen (15) days of the call..  That includes five (5) calls to the Named Plaintiff's number ending in -1282.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct. Executed this 31st day of July 2025 in Pleasant Hill, California.



Aaron Woolfson

14

Declaration of Aaron Woolfson                    Case No. 3:24-cv-02551-L-BN