**The Insured is requested to read this Certificate.**

**If it is not correct, return it immediately to the below Correspondent for appropriate alteration.**

All inquiries regarding this Certificate should be addressed to the following:

Balance Partners, LLC
Attn: Maven Program
E: cjacobs@balanceuw.com
P: (512) 923-6278

**CERTIFICATE PROVISIONS:**

1. Signature Required. This Certificate shall not be valid unless signed by the Correspondent on the attached Declaration Page.
2. Correspondent Not Insurer. The Correspondent is not an Insurer hereunder and neither is nor shall be liable for any loss or claim whatsoever.
3. Cancellation. If this Certificate provides for cancellation and this Certificate is cancelled after the inception date, earned premium must be paid for the time the insurance has been in force.
4. Service of Suit. It is agreed that in the event of the failure of Underwriters to pay any amount claimed to be due hereunder, Underwriters, at the request of the Insured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon the firm or person named in item 6 of the attached Declaration Page, and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.
5. The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon request of the Insured to give a written undertaking to the Insured that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.
6. Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-mentioned as the person to whom the said officer is authorized to mail such process or a true copy thereof.
7. Assignment. This Certificate shall not be assigned either in whole or in part without the written consent of the Correspondent endorsed hereon.
8. Attached Conditions Incorporated. This Certificate is made and accepted subject to all the provisions, conditions and warranties set forth herein, attached or endorsed, all of which are to be considered as incorporated herein.

MIPL 002 06 21

**FOLSOM 000001**

**This Declarations Page is attached to and forms part of the Policy.**

| Previous No. | Certificate No. |
|---|---|
| MIPL0108-00 | MIPL0108-01 |

1.  Name and Address of the **Named Insured**:

    Folsom Insurance Agency, LLC & Cody Folsom
    411 West Mason Street, Suite A
    Mabank, TX 75147

2.  **Policy Period**: Effective From:    May 2, 2023    to    May 2, 2024
    both days at 12:01 a.m. standard time

3.  Insurance is effective with **Fortegra Specialty Insurance Company**

    Percentage: 100%

4.  Professional Liability or Professional Liability and General Liability

    Professional Liability

5.  Limits of Liability:

    (a)    Each Claim : $1,000,000

    (b)    Annual Aggregate : $2,000,000

6.  Deductible:

    (a)    Each Claim: $5,000

7.  Retroactive Date:

    01/21/2021 for $1M/$1M limits; 6/23/2022 for $1M/$2M limits

MIPL 002 06 21

**FOLSOM 000002**

8.   Professional Services:

    Insurance Agents/Brokers

9.   Annual Premium:
    TRIA Premium:
    Fees (If applicable):
    Min Earned Premium:
    Total Premium:



10.  Forms attached hereto and Special Conditions:

    Please see the attached schedule

11.  Services of Suit may be made upon:

    Please see the attached policy form.

12.  In the event of a claim, please notify the following:

    TransEleven Claims Managers, Inc.
    700 Central Expressway South, Suite 200
    Allen, TX 75013
    Submit Claims to newclaimreporting@trans11claims.com

    And

    Balance Partners, LLC
    PO Box 2550
    Huntington, NY 11743
    Submit Claims to  claims@balanceuw.com

| 13. Servicing Agent: | 14. Program Administrator: |
|---|---|
| Mike Di Loreto<br>JDI Insurance By Design Agency, LLC<br>13465 Midway Road Suite 202<br>Dallas, TX 75244 | Balance Partners, LLC<br>PO Box 2550<br>Huntington, NY 11743 |

**Dated:** May 18, 2023

by

_____
Authorized Representative

MIPL 002 06 21

**FOLSOM 000004**

Figure:  28 TAC §1.601(a)(2)(B)

# Have a complaint or need help?

If you have a problem with a claim or your premium, call your insurance company or HMO first. If you can't work out the issue, the Texas Department of Insurance may be able to help.

Even if you file a complaint with the Texas Department of Insurance, you should also file a complaint or appeal through your insurance company or HMO. If you don't, you may lose your right to appeal.

**Fortegra Specialty Insurance Company**
To get information or file a complaint with your insurance company or HMO:

**Call: TransEleven Claims Managers Inc at 1-469-301-1122**
**Toll-free: 1-844-281-2811**
Email: https://www.trans11claims.com/submitaclaim
Mail: 5900 South Lake Forest Drive, Suite 300
McKinney, TX 75070

**The Texas Department of Insurance**
To get help with an insurance question or file a complaint with the state:
Call with a question: 1-800-252-3439
File a complaint: www.tdi.texas.gov
Email: ConsumerProtection@tdi.texas.gov
Mail: MC 111-1A, P.O. Box 149091, Austin, TX 78714-9091

# ¿Tiene una queja o necesita ayuda?

Si tiene un problema con una reclamación o con su prima de seguro, llame primero a su compañía de seguros o HMO. Si no puede resolver el problema, es posible que el Departamento de Seguros de Texas (Texas Department of Insurance, por su nombre en inglés) pueda ayudar.

Aun si usted presenta una queja ante el Departamento de Seguros de Texas, también debe presentar una queja a través del proceso de quejas o de apelaciones de su compañía de seguros o HMO. Si no lo hace, podría perder su derecho para apelar.

**Fortegra Specialty Insurance Company**
Para obtener información o para presentar una queja ante su compañía de seguros o HMO:

**FOLSOM 000005**

**Llame a: TransEleven Claims Managers Inc 1-469-301-1122**
**Teléfono gratuito: 1-844-281-2811**

Correo electrónico:  https://www.trans11claims.com/submitaclaim
Dirección postal: 5900 South Lake Forest Drive, Suite 300
McKinney, TX 75070

**El Departamento de Seguros de Texas**

Para obtener ayuda con una pregunta relacionada con los seguros o para presentar una queja ante el estado:

Llame con sus preguntas al: 1-800-252-3439

Presente una queja en: www.tdi.texas.gov

Correo electrónico: ConsumerProtection@tdi.texas.gov

Dirección postal: MC 111-1A, P.O. Box 149091, Austin, TX 78714-9091

**FOLSOM 000006**

# SCHEDULE OF FORMS & ENDORSEMENTS

| | |
|---|---|
| Maven Insurance Agents Liability Declarations Page | MIPL 002 06 21 |
| Texas Complaint Notice | |
| Schedule of Forms and Endorsements | BP MPL 015 06 21 |
| Additional Insured Schedule | MPL 020 06 21 |
| Insurance Agents and Brokers Professional Liability | MIPL 001 06 21 |
| Service of Suit Clause Endorsement | MPL 015 06 21 |
| Communicable Disease Exclusion | CG 21 32 05 09 |
| Cyber Exclusion | MPL 002 06 21 |
| Conditional Exclusion of Terrorism | CG 21 87 01 15 |

**FOLSOM 000007**

## <u>Additional Insured Schedule</u>

It is hereby understood and agreed that this Policy is amended to include the following as Additional Insured(s) but only with respect to **Claims** arising solely from the activities of the **Named Insured**:

Connect Insurance Agency, Inc.

MPL 020 06 21

**FOLSOM 000008**

# INSURANCE AGENTS AND BROKERS
# PROFESSIONAL LIABILITY POLICY

**THROUGHOUT THIS POLICY, THE WORDS "YOU" AND "YOUR" REFER TO THE NAMED INSURED SHOWN IN THE DECLARATIONS.  THE WORDS "WE", "US" AND "OUR" REFER TO THE COMPANY PROVIDING THIS INSURANCE.  THE WORD "INSURED" MEANS ANY AND ALL PERSONS OR ORGANIZATIONS QUALIFYING AS SUCH UNDER SECTION II. DEFINITIONS (H) INSURED.**

**THIS IS A CLAIMS MADE AND REPORTED POLICY.  THIS PROFESSIONAL LIABILITY POLICY IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST AN INSURED DURING THE POLICY PERIOD OR AN OPTIONAL EXTENDED REPORTING PERIOD (IF APPLICABLE) AND REPORTED TO US, IN WRITING, PURSUANT TO THE TERMS AND CONDITIONS OF THIS POLICY.  CLAIM EXPENSES REDUCE THE LIMIT OF LIABILITY UNLESS OTHERWISE AMENDED BY WRITTEN ENDORSEMENT.  REVIEW THIS POLICY CAREFULLY WITH YOUR INSURANCE BROKER OR ADVISOR.**

**THIS POLICY IS BEING ISSUED IN RELIANCE UPON ALL STATEMENTS MADE INCLUDING, BUT NOT LIMITED TO IN THE APPLICATION AND ANY SUPPLEMENTS, WHICH ARE DEEMED ATTACHED HERETO AND MADE PART OF THIS POLICY.**

**IN CONSIDERATION OF THE PREMIUM PAID AND SUBJECT TO THE TERMS AND CONDITIONS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE INSURANCE AS STATED IN THIS POLICY.**

**SECTION I. INSURANCE AGREEMENTS**

A.  Professional Liability

We shall pay **Loss** and **Claim Expenses**, in excess of the Deductible and subject always to this Policy's Limit of Liability, the **Insured** shall become legally obligated to pay as a result of a **Claim** made against an **Insured** for a **Wrongful Act** or **Related Wrongful Acts** arising from **Professional Services**, provide that:

a.  The **Claim** is first made against the **Insured** during the **Policy Period** or the **Optional Extended Reporting Period**, if applicable; and
b.  The **Claim** is reported to the Company in writing during the **Policy Period**, or within the **Automatic Reporting Period** or during the **Optional Extending Reporting Period**, if applicable; and
c.  The **Wrongful Act** or first in a series of **Related Wrongful Acts** were committed or alleged to have been committed on or after the **Retroactive Date**; and
d.  An **Insured's** partners, principles, owners, directors, officers, or risk managers had no knowledge of any circumstances that could reasonably have been expected to give rise to such **Claim** prior to the inception date of this Policy.

B.  **Disciplinary Proceedings** Expense

We shall pay up to $25,000 per **Disciplinary Proceeding**, subject to a maximum of $50,000 in the aggregate under this Policy for **Claim Expenses** incurred by an **Insured**, with our prior written consent, in responding to a **Disciplinary Proceeding**, provided that:

MIPL 001 06 21

**FOLSOM 000009**

    a. The **Disciplinary Proceeding** arises from **Professional Services**; and

    b. The **Disciplinary Proceeding** is first initiated against the **Insured** during the **Policy Period**; and

    c. The **Disciplinary Proceeding** is reported to the Company in writing during the **Policy Period** or within the **Automatic Reporting Period**; and

    d. The **Wrongful Act** or first in a series of **Related Wrongful Acts** giving rise to the **Disciplinary Proceeding** were committed or alleged to have been committed on or after the **Retroactive Date**; and

    e. An **Insured's** partners, principles, owners, directors, officers, or risk manager had no knowledge of any circumstances that could reasonably have been expected to give rise to such **Disciplinary Proceeding** prior to the inception date of this Policy.

Once the limits under Section I. B. **Disciplinary Proceedings** have been exhausted, we shall not be obligated to pay any further legal fees or expenses in connection with any **Disciplinary Proceeding** under this Policy.  When this provision applies, we shall have the right, but not the duty to defend any **Insured** in any **Disciplinary Proceeding**.

C. **Subpoena** Expense Assistance

We shall pay up to $25,000 per **Subpoena**, subject to a maximum of $50,000 in the aggregate under this Policy for **Claim Expenses** incurred by an **Insured**, with our prior written consent, in responding to a **Subpoena**, provided that:

    a. The **Subpoena** arises from **Professional Services**; and

    b. The **Subpoena** is first initiated against the **Insured** during the **Policy Period**; and

    c. The **Subpoena** is reported to the Company in writing during the **Policy Period** or within the **Automatic Reporting Period**; and

Once the limits under Section I. C. **Subpoena** Expense Assistance have been exhausted, we shall not be obligated to pay any further legal fees or expenses in connection with any **Subpoena** under this Policy.  When this provision applies, we shall have the right, but not the duty to defend any **Insured** in any **Subpoena**.

## SECTION II. DEFINITIONS

Whenever appearing in this Policy or any Endorsement issued as a part of this Policy, the following words and phrases appearing in bold type have the meanings set forth in this Section II. Definitions.

A. **Automatic Reporting Period** means the period of sixty (60 days) after the end of the **Policy Period** for reporting **Claims** arising out of **Wrongful Acts** committed or alleged to have been committed prior to the end of the **Policy Period** and on or after the **Retroactive Date**.

B. **Bodily Injury** means physical injury, sickness, disease, death, mental anguish, emotional distress, mental injury, shock, humiliation, pain and suffering or any similar injury to any person.

C. **Claim** means:

    a. A written demand made against any **Insured** for monetary damages or non-monetary relief; or

    b. Any civil or arbitration proceeding commenced by the service of a complaint or similar pleading made against any **Insured**, including any appeal thereof; or

MIPL 001 06 21

**FOLSOM 000010**

   c.  A written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding.

A **Claim** is deemed to have been first made against an **Insured** when any **Insured** first receives written notice of such **Claim**.

D.  **Claim Expenses** means:

   a.  Reasonable and necessary legal fees and expenses charged by an attorney selected and appointed by us in defense of a **Claim**, **Incident**, **Disciplinary Proceeding** or **Subpoena**; and

   b.  All other reasonable and necessary fees, costs or expenses incurred in the investigation, adjustment, defense, and appeal of a **Claim** if incurred by us or an attorney selected and appointed by us or by an **Insured** with our prior written consent; and

   c.  Reasonable and necessary expenses incurred by an **Insured** if an **Insured** is required by us to attend legal proceedings in connection with the defense of a **Claim**. Such reimbursement shall be requested in writing and is subject to the following:

     i.  The maximum reimbursement for such expenses shall not exceed $500 per day and $7,500 Per **Claim** and $25,000 per **Policy Period**.

     ii.  Expenses are not subject to the Deductible.

     iii.  After we have paid $25,000 in the aggregate under this provision, we shall not be obligated to pay any further expenses incurred by any **Insured** under this Policy.

We shall have no obligation to apply for or furnish any bond for appeal, injunction, attachment or similar purposed.

**Claim Expenses** shall not include any salary expenses, wages, or lost earnings of any **Insured** or any fees, costs or expenses incurred with respect to any criminal proceedings or criminal actions against any **Insured**.

E.  **Disciplinary Proceeding** means any proceeding by a regulatory or disciplinary official, board or agency to investigate a complaint or charge of professional misconduct against an **Insured** in the performance of **Professional Services**.

F.  **Incident** means any circumstance, situation, **Wrongful Act,** or event that the **Named Insured** or any partner, principal, officer, director, manager, or supervisory employee of an **Insured**, could reasonably believe would lead to a **Claim**.

G.  **Independent Contractor** means any individual, including leased employees of such, contracted to perform **Professional Services** on behalf of and at the direction of the **Named Insured**, but only if:

   a.  The **Named Insured** entered into a written contract for specific **Professional Services** provided by the **Independent Contractor**; and

   b.  The **Named Insured** agreed via written contract to indemnify the **Independent Contractor** for **Claims** arising from the performance of **Professional Services**.

MIPL 001 06 21

**FOLSOM 000011**

This Policy shall be excess of any valid and collectible insurance, including the amount of any deductibles and/or retentions, available to any **Independent Contractor**, including any insurance under which there is a duty to defend and regardless of whether such other policy or policies are stated to be primary, contributory, excess or contingent unless otherwise approved by us in writing.

H. **Insured** means:

    **a.** The **Named Insured** designated as such in the Declarations of this Policy; or

    **b.** Any natural person who is a current or former partner, principal, officer, director, member, or employee of any **Insured** with respect to a **Wrongful Act** committed only while acting within the scope of their duties on behalf of any **Insured**; or

    **c.** Any **Independent Contractor**; or

    d. Any **Subsidiary**; or

    e. The lawful spouse or domestic partner of an **Insured** solely by reason of their status as a spouse or domestic partner of an **Insured** or their interest in marital property/assets that are sought as recovery for such **Claim**; or

    f. The estate, heirs, assigns or legal representatives of any **Insured** in the event of such **Insured's** death, incapacity, or insolvency, for any **Claim** made against the estate, heirs, assigns or legal representatives of such **Insured** solely by reason of their status as the estate, heirs, assigns or legal representatives of such **Insured**.

I. **Loss** means:

    **a.** any monetary judgment, award or settlement for damages including statutory attorneys' fees and costs; and

    **b.** Pre and post judgment interest; and

    **c.** Punitive or exemplary damages to the extent such damages are insurable under the applicable law most favorable to insurability of punitive or exemplary damages.

    **Loss** shall not include

    **a.** Any amount which the **Insured** is not legal obligated to pay; or

    **b.** Criminal or civil fines, penalties, taxes, or sanctions; or

    **c.** Non-monetary relief; or

    **d.** any amount allocable to uncovered **Loss** under this Policy.

J. **Named Insured** means the entity or individual designated in the Declarations.

K. **Optional Extended Reporting Period** means the applicable time after the end of the **Policy Period** the **Named Insured** has the option to purchase per the conditions set forth in Section V. Reporting for reporting **Claims** arising out of **Wrongful Acts** committed or alleged to have been committed prior to the end of the **Policy Period** and on or after the **Retroactive Date**.

L. **Personal Injury** means:

    **a.** false arrest, detention, imprisonment, or malicious prosecution; or

    **b.** the publication or utterance of libel or slander or other defamatory or disparaging material; or

MIPL 001 06 21

**FOLSOM 000012**

    **c.** invasion, infringement, or interference with rights of privacy or publicity; or

    **d.** wrongful entry or eviction; or

    **e.** invasion of the right of private occupancy.

M. **Policy Period** means the period from the Effective Date of this Policy to the Expiration Date of this Policy as set forth in the Declarations or this Policy's earlier termination date, if any. **Policy Period** specifically excludes the **Automatic Reporting Period** and any **Optional Extended Reporting Period**.

N. **Professional Services** means the following activities performed by a licensed insurance agent, insurance broker, managing general agent, surplus lines broker, wholesale insurance broker, underwriting manager, managing general underwriter, claims adjuster and/or program administrator:

    **a.** The soliciting, placing, selling, or servicing of any insurance product; or

    **b.** Insurance consulting and expert witness services in connection with insurance related matters; or

    **c.** Arrangement of premium financing for a client in connection with the placement of insurance coverage; or

    **d.** Safety consulting, loss control services, teaching insurance/risk management courses/seminars, and risk management services for a client in connection with insurance products; or

    **e.** Services as a notary public in connection with soliciting, placing, selling, or servicing insurance coverage.

O. **Property Damage** means:

    **a.** Physical injury to, or destruction of, tangible property including loss of use resulting therefrom; or

    **b.** Loss of use of tangible property that has not been physically injured or destroyed.

P. **Related Wrongful Acts** means all **Wrongful Acts** that have as a common nexus any fact, circumstance, situations, event, transaction, customer, cause or series of casually connected facts, circumstances, situations, events, transactions, customers or causes. For all purposes under this Policy, **Related Wrongful Acts** shall be deemed to have been committed at the time when the first **Wrongful Act** in a series of **Related Wrongful Acts** was committed.

Q. **Retroactive Date** means the date set forth in the Declarations.

R. **Subpoena** means a written order received by an **Insured** for documents or testimony related to the performance of **Professional Services**.

S. **Subsidiary** means:

    a. Any corporation the **Named Insured** owns or controls, either directly or indirectly, more than fifty percent (50%) of the issued and outstanding voting securities representing a right to vote for the election of the board of directors of such corporation; or

    b. liability company the **Named Insured** owns or controls, either directly or indirectly, the right to elect, appoint or designate more than fifty percent (50%) of the members of the board of managers or management committee of such limited liability company; or

    c. any other entity the **Named Insured** owns or controls more than fifty percent (50%) of the ownership equity, including any limited or general partnership.

MIPL 001 06 21

**FOLSOM 000013**

T. **Wrongful Act** means any actual or alleged negligent act, error or omission alleged to have been committed by an **Insured**, solely in connection with rendering of **Professional Services**.

## SECTION III. LIMIT OF LIABILITY AND DEDUCTIBLE

A. Limit of Liability

    a. Limit of Liability – Each **Claim**

    The Limit of Liability – Each **Claim** shall apply in excess of the deductible shown in the Declarations.  Our liability for each covered **Claim** shall not exceed the amount stated in the Declarations of this Policy as the Limit of Liability – Each **Claim**.  This limit is the maximum amount of **Loss** and **Claim Expenses** that we will pay for each covered **Claim**.

    Two or more covered **Claims** arising out of a single **Wrongful Act** or **Related Wrongful Acts** will be considered a single **Claim** and shall be subject to one Limit of Liability – Each **Claim**.

    b. Limit of Liability – Aggregate

    Subject to the Limit of Liability - Each **Claim** provision above, the Limit of Liability – Aggregate is the maximum amount of **Loss** and **Claim Expenses** that we will pay for all covered **Claims** under this Policy.

B. Deductible

    a. The Deductible amount set forth in the Declarations of this Policy shall apply to **Loss** and **Claim Expenses** for each **Claim** and shall be paid by the **Insured** to us within 30 days of written demand.  The Deductible shall be first applied to all **Claim Expenses** and then any remainder will be applied to **Loss**.

## SECTION IV. DEFENSE, INVESTIGATION, CONSENT AND SETTLEMENT

A. We shall have the sole right to appoint defense counsel and the right and duty to defend any **Claim** made against the **Insured**.

B. We have the right to make such investigation, conduct negotiations and, with written consent of the **Insured**, effect settlement of any **Claim** as we deem reasonable.

C. If the **Insured** refuses to consent to any settlement recommended by us, then our liability for such **Claim** shall not exceed the amount for which we would have been liable for **Loss** and **Claim Expenses** if the **Claim** had been settled as recommended plus **Claim Expenses** incurred up to the date of the **Insured's** refusal to consent to the recommended settlement.  We shall have the right to withdraw from further defense of the **Claim** by tendering control of the defense of the **Claim** to the **Insured**.

D. As a condition precedent to coverage under this Policy, the **Insured** shall not, except at its own expense, admit liability, settle any **Claim**, accept, or reject the arbitration of any **Claim**, incur any **Claim Expenses,** or incur any **Loss**, without our prior written consent.

MIPL 001 06 21

**FOLSOM 000014**

E. As a condition precedent to coverage under this Policy, the **Insured** shall cooperate with us and provide us information as we may request, all without charge to us.  In the event of any payment under this Policy, we shall be subrogated to all the **Insured's** rights of recovery, and the **Insured** shall preserve and secure and not prejudice such rights.

**SECTION V. REPORTING**

A. All notices under this Policy shall be given in writing as indicated in the Declarations and shall reference the Policy Number set forth in the Declarations.

B. In the event of a **Claim**, the **Insured** must do the following:

a. Give prompt written notice to us, but in no event later than that **Automatic Reporting Period** or **Optional Extended Reporting Period**, if applicable.  Such written notice shall include:

  i. every demand, notice, summons, or any other applicable information received by the **Insured** or the **Insured's** representative; and
  ii. The claimant's name and address; and
  iii. A description of **Professional Services** provided or that are alleged to have been provided; and
  iv. A copy of any contracts related to the **Claim**; and
  v. Any other information as requested by us.

C. In the event of an **Incident**, the **Insured** must do the following:

a. Give prompt written notice to us.  Such written notice shall include:

  i. The claimant's name and address; and
  ii. A description of **Professional Services** provided or that are alleged to have been provided; and
  iii. A copy of any contracts related to the **Incident**; and
  iv. A description of the circumstances which the **Insured** believes constitutes an **Incident** under this Policy; and
  v. The consequences that have resulted or may result from the **Incident**; and
  vi. Any other information as requested by us.

Any **Claim** subsequently made against any **Insured** arising in whole or in part of such **Incident** shall be deemed, for the purposes of this Policy, to have been first made on the date such **Incident** was reported to us.

D. **Optional Extended Reporting Period**

a. Available Options:

  i. 12 Months: 100% of the Annual Premium
  ii. 24 Months: 150% of the Annual Premium
  iii. 36 Months: 200% of the Annual Premium

MIPL 001 06 21

**FOLSOM 000015**

b.  Eligibility:

The option to purchase an **Optional Extended Reporting Period** shall only exist if this Policy was cancelled or non-renewed for any reason other than non-payment of premium, fraud, or material misrepresentation.

c.  Conditions Precedent:

As conditions precedent to the **Named Insured's** right to purchase an **Optional Extended Reporting Period**:

  i.  All amounts due under this Policy, including any outstanding Deductibles or Premium payments, must have been paid in full at the time of the request to purchase the **Optional Extended Reporting Period**.
  ii.  The **Named Insured** must elect the **Optional Extended Reporting Period**, in writing, no later than sixty (60) days after the Expiration Date of this Policy.

d.  Limits of Liability

The Limits of Liability for the **Optional Extended Reporting Period** shall be part of, and not in addition to, the Limits of Liability for the Period of Insurance.  The purchase of the **Optional Extended Reporting Period** shall not increase or reinstate the Limit of Liability indicated in the Declarations.

e.  Any such **Optional Extended Reporting Period**:

  i.  shall only apply with respect to any **Claim** first made during the **Optional Extended Reporting Period** and only with respect to any **Wrongful Acts** committed before the effective date of cancellation, if applicable, or the Expiration Date of this Policy and on or after the **Retroactive Date**; and
  ii.  shall be evidenced by issuance of an Endorsement to this Policy; and
  iii.  is subject to all the terms, conditions, limitations, and exclusions of this Policy.

## SECTION VI. EXCLUSIONS

This Policy does not apply to any **Claim**, **Disciplinary Proceeding**, **Subpoena**, **Claim Expenses** or **Loss** contributed to by or any way involving:

A.  any dishonest, fraudulent, criminal, or malicious act, error or omission committed by or at the direction of any **Insured**. We shall provide the **Insured** with a defense of such claim unless or until the dishonest, fraudulent, criminal, or malicious act, error or omission has been determined by any trial verdict, court ruling, regulatory ruling, or legal admission, whether appealed or not.  This exclusion shall not apply to any **Insured**, who did not commit, participate in, or have prior knowledge of any such conduct.  Criminal proceedings are not covered under this policy under any circumstance.

B.  An **Insured** against another **Insured**.

MIPL 001 06 21

**FOLSOM 000016**

C.  Any actual or alleged discrimination, humiliation, harassment, or misconduct by an **Insured** because of race, creed, color, age, gender, sex, sexual preference or orientation, national origin, religion, disability, marital status, or any other claim protected by federal, state, local or other law.

D.  Any obligation under any employer's liability law, unemployment compensation law, worker's compensation law, disability benefits law or similar laws.

E.  **Bodily Injury**, **Property Damage** or **Personal Injury**.  However, this exclusion shall not apply to any **Claim** based upon or arising out of the actual or alleged performance or failure to perform **Professional Services**.

F.  Breach of any warranty, guaranty, or contract by any **Insured**, unless such liability would have existed even in the absence of such warranty, guaranty, or contract.

G.  Any actual or alleged plagiarism, piracy, misuse or infringement of any proprietary information, patent, copyright, trade secrets, trademark, trade dress, trade name, service mark, service name, title, or slogan.

H.  Any actual or alleged violation of The Racketeer Influenced and Corrupt Organizations (RICO) Act, The Securities Act of 1933, The Securities Exchange Act of 1934, The Sarbanes-Oxley Act of 2002, Section 113, Truncation of Credit Card and Debit Card Numbers, of the Fair and Accurate Trade Transactions Act (FACTA) as defined in 15 USC Section 1681, or any State Blue Sky or Securities Law or any amendments thereto or any other similar local, state, or federal law, regulation, or ordinance.

I.  Any war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

J.  Any actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

K.  Any nuclear projects, nuclear reaction, radiation or radioactive contamination or any consequence thereof.

L.  Any actual or alleged commingling of monies or accounts, or loss of monies received by the **Insured** or credited to the **Insured's** account.

M.  Any disputes involving an **Insured's** commissions, fees, or charges.

N.  The discharge, dispersal, release or escape of pollution or contamination of any kind or any governmental or regulatory directive or request to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize pollution or contamination of any kind.

O.  The formation, growth, presence, release, dispersal, containment, removal, testing for, or detection or monitoring of, or failure to detect or monitor or warn about any molds, fungi, spores, or other similar growth or organic matter, including but not limited to Aspergillus, Penicillium, or any strain or type of Stachybotris, commonly collectively referred to as the Black Molds.

MIPL 001 06 21

**FOLSOM 000017**

P.  Any fact, circumstance, situation, event, or **Wrongful Act** underlying or alleged in any prior or pending civil, criminal, administrative, or regulatory proceeding against any **Insured** as of the Effective Date of this Policy indicated in the Declarations.

Q.  Any fact, circumstance, situation, or event that is or reasonably would be regarded as the basis for a claim about which any **Named Insured**, director, officer, partner, manager, or supervisory employee had knowledge prior to the Effective Date of this Policy as indicated in the Declarations.

R.  An **Insured's** actual or alleged performance or failure to perform professional services as anything other than **Professional Services** to which this Policy applies including, but not limited to, services as an attorney, financial planner, certified public accountant, investment advisor, mortgage broker, real estate agent or broker, asset manager, securities broker/dealer, builder, architect, or engineer.

S.  Any **Professional Services** rendered to any **Insured** or any property owned, rented or occupied by any **Insured**.

T.  The solicitation, sale or administration of any Multiple Employer Welfare Arrangements (MEWA), Voluntary Employee Beneficiary Associations (VEBA) or other similar arrangements as defined by the Employee Retirement Income Security Act of 1974 and any amendments thereto.

U.  Any actual or alleged insolvency, receivership, conservatorship, liquidation, bankruptcy, failure, or inability to pay of any company, organization, entity, vehicle, or arrangement of any nature in which an Insured placed, recommended to be placed or obtained coverage.  However, this exclusion shall not apply to a **Claim** based upon or arising out of the placement, recommendation for placement, or obtaining coverage with an insurance company rated by A.M. Best as B+ or better or rated by Demotech as A or better at the time when coverage is placed, recommended, or obtained.

V.  Any pension plan, profit sharing plan, health and welfare, or any other employee benefit plan or trust sponsored by an **Insured**, in which an **Insured** is a participant, trustee, or named fiduciary.

W.  Any pension plan, profit sharing plan, health and welfare, or any other employee benefit plan or trustor which are self-funded, in whole or in part.

X.  Any ownership, formation, operation or administration of any insurance company, captive, risk retention group, self-insurance program or purchasing group.

Y.  Any promissory notes, viatical, or life settlements, or any securities backed by either viatical or life settlements.

Z.  Any guarantee, promise, or warranty as to interest rates, market values, earnings, future values or future premiums or payments in connection with variable life insurance, variable annuities, scheduled premium annuities, mutual funds, or securities.

## SECTION VII. CONDITIONS

A.  This Policy shall be subject to the applicable state law to be determined by the court of competent jurisdiction in the state indicated in the Declarations.

MIPL 001 06 21

**FOLSOM 000018**

B.  If the **Insured** has rights to recover all or part of any payment for **Loss** or **Claim Expenses** which we made under this Policy, those rights are transferred to us to the extent that we have made payment on the **Insured's** behalf. The **Insured** must do whatever is necessary to secure such rights and do nothing to impair them.  Any amount recovered shall first be applied to reduce our loss or, if applicable, as directed by law.

C.  This Policy will be excess of any other insurance, including but not limited to, project specific insurance, which also provides coverage for any **Claim**, including any deductible provisions.  However, any insurance specifically written as excess over this insurance shall not be deemed "other insurance".

D.  Your interests under this Policy may not be assigned to any other person or organization without written consent.

E.  Bankruptcy or insolvency of any **Insured** any **Insured's** estate shall not relieve us of our obligation under this Policy.

F.  This statements in the application and any supplements thereto are representations of the **Named Insured** on behalf of all **Insureds** to which this Policy applies and are deemed material to the underwriting and acceptance of coverage by us.  This Policy is issued in reliance on the accuracy of such representations.

G.  No **Insured** or anyone else may bring any legal action against us concerning this Policy until:

    a.  There has been full compliance with all the terms and conditions of this Policy; and
    b.  The amount of **Loss** has been determined by:

        i.  Final judgment against the **Insured** after trial, if the time to appeal such judgment has expired without an appeal being taken, or if an appeal is taking, after the appeal has been determined; or
        ii.  Settlement of the **Claim** in accordance with the terms and conditions of this Policy.

## SECTION VIII. TERRITORY

A.  This Policy applies to **Wrongful Acts** committed by the **Insured** anywhere in the world provided, however, that any **Claim** is brought against the **Insured** in the United States of America, its territories, or possessions.

## SECTION IX. MATERIAL CHANGES

A.  If during the **Policy Period**, the **Named Insured** acquires or creates a **Subsidiary**, such **Subsidiary** shall be considered an **Insured** under this Policy for a period of ninety (90) days from the date of acquisition or creation, but only for **Wrongful Acts** committed after the date of such acquisition or creation.  To obtain coverage beyond ninety (90) days, the **Insured** must:

    a.  Provide written notice to us of such acquisition or creation; and
    b.  Provide us with any additional information required; and
    c.  Accept any special terms, conditions, exclusion, or additional premium we may require

Such coverage shall be issued by us, at our discretion, in writing.  Notwithstanding the above, any entity that becomes a **Subsidiary** after the Effective Date of this Policy shall not be automatically deemed a **Subsidiary** if such

MIPL 001 06 21

**FOLSOM 000019**

entity's annual gross revenues exceed twenty-five percent (25%) of the **Named Insured's** annual gross revenue as of the Effective Date of this Policy.

B.  If during the **Policy Period**, the **Named Insured** merges into or consolidates with another entity such that the **Named Insured** is not the surviving entity or another entity, person or group of entities and/or persons acting in concert acquires securities or voting rights which results in ownership or voting control by the other entity(ies) or person(s) of more than fifty percent (50%) of the outstanding securities representing the rights to vote for the election of any **Insured's** directors, then the coverage provided by this Policy shall continue until the later of the expiration date of this Policy or such other date to which we agree, but solely for **Claims** for **Wrongful Acts** which wholly occurred prior to the transaction and on or after the **Retroactive Date** and are otherwise covered by this Policy.  The **Named Insured** shall give written notice of such transaction to us within thirty (30) days of the transaction.

## SECTION X. CANCELLATION OR NON-RENEWAL

A.  Cancellation

This Policy may be cancelled at any time by you by written notice to us.  If this insurance is cancelled by the **Insured**, we shall retain the customary short rate proportion of the premium hereon, subject to a twenty-five percent (25%) minimum earned premium.

This Policy may be cancelled by us for any reason by written notice to you stating when, not less than thirty (30) days thereafter (ten (10) days for non-payment of premium), the cancellation shall be effective.  The mailing of such notice shall be sufficient proof and this Policy shall terminate at the date and hour specified in the cancellation notice.

If the period of limitation relating to giving notice is prohibited or made void by any law of the state indicated in the Declarations page, such period shall be amended to be equal to the minimum period of limitation permitted by such law.

If this Policy is cancelled by us, we shall retain the pro rata portion of the premium hereon, subject to a twenty-five percent (25%) minimum earned premium.

B.  Non-Renewal

This Policy may be non-renewed by us for any reason by written notice at any time.  The mailing of such notice shall be sufficient proof.

If the period of limitation relating to giving notice is prohibited or made void by any law of the state indicated in the Declarations page, such period shall be amended to be equal to the minimum period of limitation permitted by such law.

## SECTION XI. ENTIRE AGREEMENT

A.  By acceptance of this Policy, the **Named Insured** agrees, on behalf of all **Insureds**, that this Policy embodies all agreements existing between the **Insured** and us or any of our agents relating to this Policy.  Notice to any agent

MIPL 001 06 21

**FOLSOM 000020**

or knowledge possessed by any agent or individual acting on our behalf shall not affect a waiver or a change in any part of this Policy or estop us from asserting any rights under the terms of this policy. The terms and conditions of this Policy cannot be waived or amended except by written endorsement issued by us and made a part of this Policy.

B.  In the event we do not insist on strict compliance with any of the terms, provisions, or conditions of coverage under this Policy, or if we do not exercise our rights or privileges thereto, our actions shall neither operate nor be construed as a waiver of our right to enforce any term, provision, or condition of coverage.

MIPL 001 06 21

**FOLSOM 000021**

# SERVICE OF SUIT CLAUSE ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY RULES. PLEASE READ IT CAREFULLY.**

I.   In any cause of action arising under this policy, or certificate, cover note, or other confirmation of this insurance issued by your surplus lines agent, we will, at your request, submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing herein constitutes or should be understood to constitute a waiver of our rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. In any suit instituted against us upon this policy, we will abide by the final decision of such court or of any appellate court in the event of appeal.

II.  All lawful process may be served in any action, suit or proceeding instituted by, or on behalf of, you or any beneficiary under this policy, against us arising out of this policy, upon:

**Corporate Creations Network Inc. at the address designated on pages 4-9**

III. Pursuant to any law of any state, the District of Columbia or territory of the United States which makes provision therefore, we hereby designate the Superintendent, Commissioner or Director of Insurance or other applicable individual specified for that purpose in the applicable statute or regulation, or his successor or successors in office, as attorney or agent for receipt of lawful service of process as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of you or any beneficiary hereunder arising out of this policy of insurance, and we hereby designate the above-named as the person to whom the said individual, the surplus lines producer, or any applicable state surplus lines association or stamping office, is authorized to mail such process or a true copy thereof. The service of process as set forth above and below is cumulative to any other methods which may be provided by law for service of process upon us.

IV.  THE LANGUAGE OF THIS ENDORSEMENT ABOVE IS MODIFIED IN EACH APPLICABLE STATE AS SET FORTH BELOW TO COMPLY WITH CERTAIN STATE SPECIFIC REQUIREMENTS AND DISCLOSURES:

**Arizona**
By issuing or delivering a surplus lines policy through a surplus lines broker in Arizona, we are conclusively deemed to have irrevocably appointed the Arizona Director of Insurance as our agent for acceptance of service of all legal process issued in Arizona in any action or proceeding under or arising out of such policy, and service of the process on the director is lawful personal service on us.

**California**
We may be sued upon any cause of action arising in under any surplus line insurance contract made by us, or any evidence of such insurance issued or delivered by the surplus line broker, pursuant to the procedures set forth in Cal. Ins. Code §§ 1610 to 1620, inclusive. Further, by assuming surplus line insurance, we subject ourselves to Chapter 6 of the California Insurance Code.

**Idaho**
We shall be sued upon any cause of action arising in Idaho under any contract issued by us as a surplus line contract pursuant to Idaho surplus lines law, in the district court of the county in which the cause of action arose. Service of legal process against us may be made in any such action by service upon the Director of the Department of Insurance

MPL 015 06 21

**FOLSOM 000022**

of Idaho as provided in Idaho Code Ann. § 41-334(1). The director shall forthwith mail a copy of the process served to the person designated in Section II of this Endorsement, by prepaid registered mail with return receipt requested. We have thirty (30) days from the date of service upon the director within which to plead, answer, or otherwise defend the action. Upon service of process upon the director in accordance with Idaho Code Ann. § 41-1231 the court shall be deemed to have jurisdiction in personam over us.

**Illinois**

We hereby designate the Illinois Director of Insurance and his successors in office as our true and lawful attorney, upon whom may be served all lawful process in any action, suit or proceeding arising out of any insurance we write delivered pursuant to 215 Ill. Comp. Stat. § 5/445.

**Iowa**

We may be sued upon a cause of action arising in Iowa under a surplus lines insurance policy or contract placed by us or upon evidence of insurance placed by us and issued or delivered in Iowa by a surplus lines insurance producer.

**Kentucky**

We shall be sued upon any cause of action arising in Kentucky under any contract issued by us as a surplus lines contract pursuant to subtitle 10 of the Kentucky Insurance Code, in the Circuit Court of the county in which the cause of action arose. Any service of legal process against us may be made in any such action by service upon the Secretary of State of the State of Kentucky as provided in Ky. Rev. Stat. Ann. § 304.3- 230(5).

**Louisiana**

We shall be sued upon any cause of action arising in Louisiana under any contract issued by us as a surplus lines contract pursuant to Chapter 2, Part 1, Subpart O of the Louisiana Insurance Code, in the district court of the parish in which the cause of action arose. Service of legal process against us may be made in any such action by service upon the Secretary of State of the State of Louisiana or some other person in his office whom he may designate during his absence. The secretary of state shall forthwith mail the documents of process served, or a true copy thereof, to the person designated in Section II of this Endorsement by registered or certified mail or by commercial courier as defined in La. Rev. Stat. Ann. tit. § 13:3204(D). We have forty (40) days from the date of service upon the secretary of state within which to plead, answer, or otherwise defend the action. Upon service of process upon the secretary of state in accordance with this provision, the court shall be deemed to have jurisdiction in personam over us.

**Maryland**

We hereby appoint the Maryland Insurance Commissioner as agent for the acceptance of service of process in Maryland.

**Michigan**

We hereby appoint the Michigan Insurance Commissioner as our resident agent for the purposes of service of process in Michigan.

**Pennsylvania**

We may be sued upon any cause of action arising in the Commonwealth of Pennsylvania under any surplus lines insurance contract made by us or evidence of such insurance issued or delivered by a surplus lines licensee. Any service of process on us shall be made pursuant to the procedures provided by 42 Pa.C.S. Ch. 53 Subch. B (relating to interstate and international procedure). By accepting surplus lines insurance we are deemed thereby to have subjected ourselves to accepting service of process under 42 Pa.C.S. Ch. 53 Subch. B.

MPL 015 06 21

**FOLSOM 000023**

**South Dakota**

Any cause of action against us arising in South Dakota on a surplus line contract shall be brought in the circuit court for the county in which the cause of action arose. Service of legal process against us may be made in any such action by service upon the South Dakota director of the Division of Insurance as provided in S.D. Codified Laws § 58-6-39. The director shall forthwith mail a copy of the process served, to the person designated in Section II of this Endorsement, by prepaid registered or certified mail with return receipt requested. We shall have thirty days from the date of service upon the director within which to plead, answer, or otherwise defend the action. Upon service of process upon the director in accordance with S.D. Codified Laws § 58-6-38, the court shall be deemed to have jurisdiction in personam over us. By issuing a surplus lines policy, we are deemed thereby to have authorized service of process against us in the manner and to the effect as provided in S.D. Codified Laws § 58-6-37.

**Tennessee**

We may be sued upon any cause of action arising in Tennessee under any surplus lines insurance contract issued by us or certificate, cover note or other confirmation of the insurance issued by the surplus lines agent, pursuant to the same procedure as is provided for unauthorized insurers in Title 56, Chapter 2, Part 6 and Tenn. Code Ann. § 56-7-105(b) of the of Tennessee Insurance Law. By assuming a surplus lines insurance risk pursuant to Title 56, Chapter 14, Part 1, we are deemed to have subjected ourselves to the requirements of Tenn. Code Ann. § 56-14-112.

ALL OTHER TERMS, CONDITIONS, PROVISIONS AND EXCLUSIONS OF THIS POLICY REMAIN THE SAME.

MPL 015 06 21

**FOLSOM 000024**

**Corporate Creations Addresses:**

**ALABAMA**
Corporate Creations Network Inc.
4000 Eagle Point Corporate Drive
Birmingham, AL 35242
Shelby County
(205) 533-8844

**ALASKA***
Corporate Creations Network Inc.
3085 Mountainwood Circle
Juneau, AK 99801
Juneau County

AK ENTITY NUMBER: 74930F

**ARIZONA**
Corporate Creations Network Inc.
3260 N. Hayden Road #210
Scottsdale, AZ 85251
Maricopa County
(480) 993-2162

**ARKANSAS**
Corporate Creations Network Inc.
609 SW 8th Street #600
Bentonville, AR 72712
Benton County
(501) 255-0832
FILING NUMBER: 100216943

**CALIFORNIA**
Corporate Creations Network Inc. [C2250455]
4640 Admiralty Way, 5th Floor
Marina del Rey, CA 90292
Los Angeles County
(707) 320-0504
ENTITY NUMBER: C2250455

**COLORADO**
Corporate Creations Network Inc.
155 E. Boardwalk #490
Fort Collins, CO 80525
Larimer County
(303) 325-5189

**CONNECTICUT**
Corporate Creations Network Inc.
6 Landmark Square, 4th Floor
Stamford, CT 06901
Fairfield County
(203) 649-6438

**DELAWARE***
Corporate Creations Network Inc.
3411 Silverside Road Tatnall Building #104
Wilmington, DE 19810
New Castle County
(302) 351-3367
FILE NUMBER: 3290251

**DISTRICT OF COLUMBIA***
Corporate Creations Network Inc.
1629 K Street, NW, #300
Washington, DC 20006
District of Columbia County
(202) 558-5443

**FLORIDA**
Corporate Creations Network Inc.
801 US Highway 1
North Palm Beach, FL 33408
Palm Beach County
(561) 694-8107

MPL 015 06 21

**FOLSOM 000025**

**GEORGIA**
Corporate Creations Network Inc.
2985 Gordy Parkway, 1st Floor
Marietta, GA 30066
Cobb County
(404) 806-7387

**HAWAII**
Corporate Creations Network Inc.
1136 Union Mall #301
Honolulu, HI 96813
Honolulu County

**IDAHO**
Corporate Creations Network Inc.
950 W. Bannock Street #1100
Boise, ID 83702
Ada County
(208) 475-4283
FILING NUMBER: C141604

**ILLINOIS\***
Corporate Creations Network Inc.
350 S. Northwest Highway #300
Park Ridge, IL 60068
Cook County
(773) 649-9240

**INDIANA\***
Corporate Creations Network Inc.
8520 Allison Pointe Blvd #220
Indianapolis, IN 46250
Marion County
(574) 968-7009

**IOWA\***
Corporate Creations Network Inc.
3106 Ingersoll Avenue
Des Moines, IA 50312
Polk County
(515) 309-6947

**KANSAS**
Corporate Creations Network Inc.
4601 E. Douglas Avenue #700
Wichita, KS 67218
Sedgwick County
(785) 200-8393
ID NUMBER: 3281045

**KENTUCKY**
Corporate Creations Network Inc.
101 North Seventh Street
Louisville, KY 40202
Jefferson County
(502) 561-3437
ORGANIZATION NUMBER: 0526847

**MAINE DOMESTIC CORP\***
Debra Bilodeau
128 State St., #3
Augusta, ME 04330
Kennebec County
(207) 248-6235
CRA NUMBER: P10117
CAUTION: DO NOT USE THIS AUGUSTA ADDRESS
UNLESS YOUR ENTITY IS A DOMESTIC FOR

**LOUISIANA**
Corporate Creations Network Inc.
1070-B West Causeway Approach
Mandeville, LA 70471
St. Tammany Parish
(504) 265-1236

MPL 015 06 21

**FOLSOM 000026**

PROFIT CORPORATION FORMED IN MAINE.

**MAINE EXCEPT DOMESTIC CORP**
Corporate Creations Network Inc.
477 Congress Street, 5th Floor
Portland, ME 04101
Cumberland County
(207) 512-2677
CRA NUMBER: P10221

**MARYLAND**
Corporate Creations Network Inc.
2 Wisconsin Circle #700
Chevy Chase, MD 20815
Montgomery County
(240) 724-6897

**MASSACHUSETTS**
Corporate Creations Network Inc.
225 Cedar Hill Street #200
Marlborough, MA 01752
Middlesex County
(617) 532-0770

**MICHIGAN***
Corporate Creations Network Inc.
28175 Haggerty Road
Novi, MI 48377
Oakland County
(269) 201-2411

**MINNESOTA***
Corporate Creations Network Inc.
5200 Willson Road #150
Edina, MN 55424
Hennepin County
(612) 605-1564

**MISSISSIPPI***
Corporate Creations Network Inc.
232 Market Street #1600
Flowood, MS 39232
Rankin County
(601) 914-4610

**MISSOURI***
Corporate Creations Network Inc.
12747 Olive Boulevard #300
St. Louis, MO 63141
St. Louis County
(314) 667-5376

**MONTANA***
Corporate Creations Network Inc.
1925 Grand Avenue #127
Billings, MT 59102
Yellowstone County
(406) 204-4538
ID NUMBER: F038308

**NEBRASKA***
Corporate Creations Network Inc.
5000 Central Park Drive #204
Lincoln, NE 68504
Lancaster County
(402) 298-5578

**NEVADA***
Corporate Creations Network Inc.
8275 South Eastern Avenue #200
Las Vegas, NV 89123
Clark County
(702) 951-9324

MPL 015 06 21

**FOLSOM 000027**

ENTITY NUMBER: E0702342008-1

**NEW HAMPSHIRE**
Corporate Creations Network Inc.
3 Executive Park Drive #201A
Bedford, NH 03110
Hillsborough County
(603) 369-3031

**NEW JERSEY**
Corporate Creations Network Inc.
12 Christopher Way #200
Eatontown, NJ 07724
Monmouth County
(856) 269-9055
REGISTERED AGENT NUMBER: 2141862

**NEW MEXICO**
Corporate Creations Network Inc.
400 N. Pennsylvania Avenue #600
Roswell, NM 88201
Chaves County
(575) 201-2820

**NEW YORK**
Corporate Creations Network Inc.
15 North Mill Street
Nyack, NY 10960
Rockland County
(845) 510-9655
NOTICE: YOU MAY REQUEST USE OF OUR NEW
YORK CITY ADDRESS. THE NYC ADDRESS IS ONLY
FOR USE IN CONNECTION WITH FINANCING
TRANSACTIONS THAT REQUIRE A SERVICE OF
PROCESS AGENT LOCATED IN NEW YORK CITY.

**NORTH CAROLINA***
Corporate Creations Network Inc.
15720 Brixham Hill Avenue #300
Charlotte, NC 28277
Mecklenburg County
(704) 412-3062

**NORTH DAKOTA***
Corporate Creations Network Inc.
1709 North 19th Street #3
Bismarck, ND 58501
Burleigh County
(701) 214-5861
SYSTEM ID: 17523500

**OHIO**
Corporate Creations Network Inc.
119 E. Court Street
Cincinnati, OH 45202
Hamilton County
(513) 268-0326

**OKLAHOMA**
Corporate Creations Network Inc.
601 South Boulder #600
Tulsa, OK 74119
Tulsa County
(405) 227-9622

**OREGON**
Corporate Creations Network Inc.

**PENNSYLVANIA**
Corporate Creations Network Inc.

MPL 015 06 21

**FOLSOM 000028**

5708 SE 136th Avenue #2
Portland, OR 97236
Washington County
(541) 201-8797

1001 State Street #1400
Erie, PA 16501
Erie County
(814) 209-0328
ENTITY NUMBER: 2965335

**PUERTO RICO**
Corporate Creations Puerto Rico Inc.
Metro Office Park #7, Street 1, #204
Guaynabo, PR 00968
Guaynabo
(787) 966-7539

**RHODE ISLAND***
Corporate Creations Network Inc.
10 Dorrance Street #700
Providence, RI 02903
Providence County
(401) 622-4509

**SOUTH CAROLINA**
Corporate Creations Network Inc.
6650 Rivers Avenue
North Charleston, SC 29406
Charleston County
(843) 242-7335

**SOUTH DAKOTA***
Corporate Creations Network Inc.
101 S. Reid Street #307
Sioux Falls, SD 57103
Minnehaha County
(605) 221-3373
CRA NUMBER: CR000019

**TENNESSEE**
Corporate Creations Network Inc.
205 Powell Place
Brentwood, TN 37027
Williamson County
(615) 206-7490
CONTROL NUMBER: 000412746

**TEXAS**
Corporate Creations Network Inc.
5444 Westheimer #1000
Houston, TX 77056
Harris County
(210) 858-5983

**UTAH***
Corporate Creations Network Inc.
2825 East Cottonwood Parkway #500
Salt Lake City, UT 84121
Salt Lake County
(801) 337-4459
ENTITY NUMBER: 7221666-0250

**VERMONT***
Corporate Creations Network Inc.
1233 Shelburne Road #400
South Burlington, VT 05403
Chittenden County
(802) 264-6036

**VIRGINIA***
Corporate Creations Network Inc.

**WASHINGTON***
Corporate Creations Network Inc.

MPL 015 06 21

**FOLSOM 000029**

6802 Paragon Place #410
Richmond, VA 23230
Henrico County
(757) 214-9229
CC: RA6779 UAG: RA8578

West 505 Riverside Avenue #500
Spokane, WA 99201
Spokane County
(509) 279-0297

**WEST VIRGINIA\***
Corporate Creations Network Inc.
126 East Burke Street
Martinsburg, WV 25401
Berkeley County
(304) 212-4922

**WISCONSIN\***
Corporate Creations Network Inc.
4650 W. Spencer Street
Appleton, WI 54914
Outagamie County
(920) 968-7701

**WYOMING**
Corporate Creations Network Inc.
5830 E. 2nd Street
Casper, WY 82609
Natrona County
(307) 224-4984
ID NUMBER: 0107437

MPL 015 06 21

**FOLSOM 000030**

**COMMERCIAL GENERAL LIABILITY**
**CG 21 32 05 09**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# COMMUNICABLE DISEASE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Personal and advertising injury" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

**CG 21 32 05 09**          © Insurance Services Office, Inc., 2008                    ❑

**FOLSOM 000031**

# Cyber Exclusion

1. Notwithstanding any provision to the contrary within this Policy or any endorsement thereto, this Policy excludes any **Cyber Loss**.

2. If we allege that by reason of this exclusion any **Cyber Loss** sustained by the **Insured** is not covered by this Policy, the burden of proving the contrary shall be upon the **Insured**.

3. For the purposes of this Exclusion:

   a. "**Cyber Loss**" means all actual or alleged Injury or Damage or any other injury or damage of any kind, or any loss, liability, compensation, or statutory fine or penalty or any other cost or expense whatsoever, directly or indirectly caused by, contributed to by, resulting from, arising out of or in connection with any **Cyber Incident**.
   b. "**Cyber Incident**" means:
      i. an unauthorized or malicious act or series of related unauthorized or malicious acts, regardless of time and place, or the threat or hoax thereof; and/or
      ii. a failure to act, any error or omission or accident or series of related failures to act, errors or omissions or accidents; and/or
      iii. a breach of duty, statutory duty or regulatory duty or trust or series of related breaches of duty, statutory duty or regulatory duty or trust; involving access to, processing of, use of or operation of any **Computer System** or any data by any person or group(s) of persons.
   c. "**Computer System**" means any computer, hardware, software, information technology and communications system or electronic device, including any similar system or any configuration of the aforementioned and including any associated input, output or data storage device, networking equipment or back up facility.

All other terms and conditions of this Policy remain unchanged.

MPL 002 06 21

**FOLSOM 000032**

COMMERCIAL GENERAL LIABILITY
CG 21 87 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    UNDERGROUND STORAGE TANK POLICY

**A. Applicability Of The Provisions Of This Endorsement**

1. **The provisions of this endorsement become applicable commencing on the date when any one or more of the following first occurs. But if your policy (meaning the policy period in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date your policy begins.**

   a. **The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this Coverage Part or Policy; or**

   b. **A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:**

      (1) **Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or**

      (2) **Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or**

      (3) **Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.**

2. **If the provisions of this endorsement become applicable, such provisions:**

   a. **Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to an incident(s) of terrorism (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for claims made policies, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and**

   b. **Remain applicable unless we notify you of changes in these provisions, in response to federal law.**

3. **If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.**

**CG 21 87 01 15**            © Insurance Services Office, Inc., 2015

**FOLSOM 000033**

**B.** The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

    **a.** That involve the following or preparation for the following:

    **(1)** Use or threat of force or violence; or

    **(2)** Commission or threat of a dangerous act; or

    **(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

    **b.** When one or both of the following applies:

    **(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

    **(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

**C.** The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    **a.** Physical injury that involves a substantial risk of death; or

    **b.** Protracted and obvious physical disfigurement; or

    **c.** Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs **C.5.** or **C.6.** are exceeded.

With respect to this Exclusion, Paragraphs **C.5.** and **C.6.** describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part or Policy.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

**FOLSOM 000034**